Opinion filed January 13,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00278-CR

                                                    __________

 

 

                               JAMES
BRYAN HANSON, Appellant

 

                                                             V.

 

                                    
STATE OF TEXAS, Appellee

 



 

                                   On
Appeal from the 104th District Court

 

                                                            Taylor
County, Texas

 

                                                    Trial
Court Cause No. 16317B

 



 

M
E M O R A N D U M   O P I N I O N

The
trial court convicted James Bryan Hanson upon his open plea of guilt of the
offense of aggravated assault and sentenced him to confinement for twenty years. 
The judgment reflects that this is a first degree felony, but the indictment
alleges a second degree felony.  See Tex.
Penal Code Ann. § 22.02(b) (Vernon
Supp. 2010) (subject to exceptions not relevant here, aggravated assault is a
second degree felony).  We modify the judgment to reflect a second degree
felony conviction but otherwise affirm. 

                                                                                                                                        
I.  Background Facts

Hanson
was charged with aggravated assault in two separate indictments.  This appeal
arises out of his indictment for assaulting Patricia Garza.  The State was
having difficulty locating Garza, so it offered Hanson a plea agreement: if he
pleaded guilty to assaulting Garza, the State would dismiss the second
indictment and would recommend a five-year sentence. Hanson accepted the offer,
but before a sentencing hearing could be held, Garza was located.  She opposed
the plea agreement, and the State withdrew its offer except that it did dismiss
the second indictment.  The trial court admonished Hanson that, if he were found
guilty of aggravated assault, he would be sentenced to a minimum of five years
confinement and could be sentenced to a maximum of ninety-nine years or life in
prison.  Hanson entered an open plea of guilty, signed a stipulation of
evidence, and signed and initialed a written plea admonishment.  In the
stipulation, Hanson admitted to intentionally and knowingly strangling Garza
with a rope.  The written admonishment advised Hanson that he could be
imprisoned for no less than five years or for as long as life.

The
trial court ordered a presentence investigation and, after receipt of that
report, conducted a sentencing hearing.  Garza testified and described the
incident.  She claimed that Hanson first tried to hang their puppy and then he choked
her with a rope until she passed out. Hanson testified that he “went blank”
and, therefore, did not remember much of the incident.  Nonetheless, he was
fairly certain that it did not happen the way Garza described, but he
acknowledged that he must have done something bad because of the way she acted
after the incident.  Trial counsel requested a five-year sentence and explained
the plea bargain discussions.  The State confirmed that it had originally
offered Hanson ten years, had dropped that to five years when they were unable
to locate Garza, and had withdrawn this offer based upon Garza’s wishes.  The
trial court sentenced Hanson to twenty years confinement.  

Hanson
filed a motion for new trial and alleged that his plea was not voluntary and
knowing because he received ineffective assistance of counsel.  Specifically,
Hanson argued that he did not appreciate the consequences of his plea because
he was led to believe that he would only receive a five-year sentence.  The
trial court conducted an evidentiary hearing and denied the motion.

II. 
Issue

Hanson
challenges his conviction with one issue, contending that the trial court erred
by denying his motion for new trial.  Although this issue is not specifically
styled an ineffective assistance of counsel claim, it is predicated entirely
upon counsel’s actions and the contention that Hanson pleaded guilty only
because of his counsel’s misrepresentations.  To prevail, therefore, Hanson
must establish that he received ineffective assistance of counsel.

III. 
Did Hanson Receive Ineffective Assistance of Counsel?

 A. 
Standard of Review.

We review the trial court’s refusal to grant a new trial for an abuse of
discretion.  Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App.
2004).  When the motion for new trial alleges ineffective assistance of
counsel, we must determine whether the trial court’s decision was clearly wrong
and outside the zone of disagreement.  Anderson v. State, 193 S.W.3d 34,
39 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).  We view the evidence in
the light most favorable to the trial court’s ruling and presume that all
reasonable factual findings that could have been made against the losing party
were made.  Charles, 146 S.W.3d at 208.

To prevail on a claim of ineffective assistance of counsel, an appellant
must establish that his lawyer’s performance fell below an objective standard
of reasonableness and that there is a reasonable probability the result of the
proceeding would have been different but for counsel’s deficient performance.  Strickland v. Washington, 466 U.S. 668, 693-94 (1984); Mallett v. State, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001). A reasonable probability is a probability sufficient
to undermine confidence in the outcome of the trial.  Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986).  The purpose of this two-pronged test is to judge
whether counsel’s conduct so compromised the proper functioning of the
adversarial process that the trial cannot be said to have produced a reliable
result.  Thompson v. State, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999).

The review of defense counsel’s
representation is highly deferential and presumes that counsel’s actions fell
within a wide range of reasonable professional assistance.  Tong v.
State, 25 S.W.3d 707, 712 (Tex. Crim. App.
2000).  Hanson must overcome the presumption that, under the
circumstances, the challenged action might be considered sound trial strategy. Jackson v.
State, 877 S.W.2d 768 (Tex. Crim. App. 1994);
Hayden v.
State, 155 S.W.3d 640, 648 (Tex. App.—Eastland
2005, pet. ref’d).  When the record is silent on the motivations
underlying counsel’s tactical decisions, the appellant usually
cannot overcome the strong presumption that counsel’s conduct was reasonable.  Thompson, 9 S.W.3d at 813.  In order to defeat Strickland’s presumption of
reasonable professional assistance, “any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.” Id. at 814 (quoting McFarland
v. State, 928 S.W.2d 482, 500 (Tex. Crim. App.
1996)).  We do not inquire into trial strategy unless no plausible
basis exists for trial counsel’s actions.  Johnson v.
State, 614 S.W.2d 148, 152 (Tex. Crim. App.
1981).  When the record contains no evidence of the reasoning behind
trial counsel’s actions, we cannot conclude that counsel’s performance was
deficient.  Jackson, 877 S.W.2d at 771.

A record that shows that the
trial court properly admonished a defendant creates a prima facie showing that
the plea was made voluntarily and knowingly.  Martinez v. State, 981
S.W.2d 195, 197 (Tex. Crim. App. 1998).  Upon this showing, the burden shifts
to the defendant to show that the plea was involuntary.  Id.  A plea
based upon advice of inadequate counsel is considered involuntary.  Ex parte
Burns, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980).

            B.  Trial Counsel’s
Advice.

Hanson’s
trial counsel testified at the motion for new trial hearing, and he described his
plea bargain discussions with the State.  After the victim voiced her
opposition to a five-year sentence, he and the prosecuting attorney discussed
what they would tell the trial court.  The prosecutor told counsel that he
would not object if counsel wanted to tell the court that a five-year offer had
been made, that it was withdrawn at the victim’s request, and that the State
had no objection to a five-year sentence.  Based upon this discussion, trial
counsel advised Hanson to enter an open plea.  He denied ever promising Hanson
that he would receive a five-year sentence, and he told Hanson that the trial
court was not bound by any prior plea offers and that it had the authority to
consider the full range of punishment.  But, he did suggest an open plea because
he believed the court would be persuaded by the State’s five-year offer.  Trial
counsel testified that Hanson was influenced by his advice to plead guilty and by
his opinion that there was a good chance the trial court would sentence him to
something close to five years and that, but for this advice, Hanson would have
pleaded not guilty.

Hanson
also testified.  He understood that he would receive a five-year sentence if he
entered an open plea.  His trial counsel told him that the judge could enter a different
sentence, but he also said that he did not think this was likely.  Hanson
claimed that, if he had known that he was going to receive more than a
five-year sentence, he would have pleaded not guilty.

            C. 
Was Hanson’s Plea Voluntary?

The
test for determining the validity of a guilty plea is whether the plea
represents a voluntary and intelligent choice among the alternative choices of
action open to the defendant.  Hill v. Lockhart, 474 U.S. 52, 56
(1985).  When the defendant is represented by counsel during the plea process
and enters his plea upon the advice of counsel, the voluntariness of the plea
depends on (1) whether counsel’s advice was within the range of competence
demanded of attorneys in criminal cases and, if not, (2) whether there is a
reasonable probability that, but for counsel’s errors, he would not have
pleaded guilty and would have insisted on going to trial.  Ex parte
Moody, 991 S.W.2d 856, 857 (Tex. Crim. App. 1999).  A plea is not rendered
involuntary simply because a defendant received a greater punishment than he
anticipated, Tovar-Torres v. State, 860 S.W.2d 176, 178 (Tex.
App.—Dallas 1993, no pet.), or because the defendant did not correctly assess
every relevant factor entering into his decision.  Talbott v. State, 93
S.W.3d 521, 526 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  Because the
trial court admonished Hanson on the range of punishment before he entered his
plea, Hanson has the burden of proof.  Martinez, 981 S.W.2d at 197.

We
appreciate trial counsel’s consternation for not correctly predicting what
sentence the trial court would impose, but Hanson has not shown that the trial
court abused its discretion by finding that counsel’s advice was within the
range of competence demanded of attorneys in criminal cases.  Because the State
withdrew its plea offer, Hanson’s choices were to enter an open plea of guilty
or to go to trial.  Hanson’s testimony that he blanked out, coupled with his
admission that he knew he had done something bad, effectively precluded a
meaningful defense.  Pleading guilty and showing contrition was, therefore, a
reasonable trial strategy.

Predicting
a sentencing decision is an inexact science at best.  In this instance, it was
not unreasonable for counsel to believe that the trial court would consider the
State’s five-year and ten-year plea offers as evidence of a reasonable
punishment range, particularly considering the mitigating evidence he was
prepared to offer.  Hanson testified at the punishment hearing that he was
diagnosed as “bipolar with paranoia schizophrenia.”  He was apparently off his
medication at the time, and this resulted in mood and behavioral problems.  Counsel
also had evidence minimizing the impact this incident had on Garza.  Hanson
testified that they stayed together for six days after the incident and that the
incident started with her coming at him with a knife. Hanson’s sentence was
clearly impacted by Garza’s testimony because the trial court described this
testimony as compelling, but Hanson offered no evidence that counsel could have
predicted this in advance.

Hanson
may not have fully appreciated his potential punishment, but he was repeatedly
warned that he faced much more than the five years previously offered by the
State.  Trial counsel advised Hanson that there were no guarantees and that the
trial court could consider the full range of punishment.  The trial court
admonished Hanson orally and in writing that he faced imprisonment for up to
ninety-nine years or life.[1] 
Because Hanson was indicted for a second degree felony, the trial court should
have admonished him that his maximum sentence was twenty years, but the admonishment
he received only bolsters the conclusion that Hanson was informed prior to
pleading guilty that the trial court could, within its sole discretion, impose
a much harsher punishment than five years confinement.  Hanson’s issue is
overruled.

IV. 
Conclusion

The
judgment of the trial court is modified to reflect that Hanson was convicted of
a second degree felony.  In all other respects, that judgment is affirmed.  

                                                                              

            

RICK STRANGE

                                                                                    JUSTICE

 

January 13, 2011

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]We note that at sentencing the trial court clarified
that the offense was a second degree felony.